

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Matthew DellaBetta*
*Assistant United States Attorney*
*Matthew.DellaBetta@usdoj.gov*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4857
MAIN: 410-209-4800

\_\_\_ FILED  \_\_\_ ENTERED
\_\_\_ LOGGED  \_\_\_ RECEIVED

August 16, 2018

NOV 15 2018

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

NM  DEPUTY

Christian Lassiter, Esq.

Re: <u>United States v. Antonio Johnson</u>
    Criminal No. CCB-18-140 (D. Md.)

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Antonio Johnson (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by September 17, 2018, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offense(s) of Conviction</u>

1.   The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Interference with Interstate Commerce by Robbery in violation of 18 U.S.C. § 1951(a). The Defendant admits that the Defendant is, in fact, guilty of the offense(s) and will so advise the Court.

<u>Elements of the Offense(s)</u>

2.   The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland, the Defendant:

a. the Defendant knowingly and intentionally obtained the property of another, or from the presence of another;

b. the Defendant did so by wrongful use of actual or threatened force, violence, or fear; and

c. that, as a result of the Defendant's actions, interstate commerce, or an item moving in interstate commerce, was obstructed, delayed, or affected in any way or degree.

Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISON-MENT | MAX IMPRISON-MENT | MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS-MENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1951(a) | 0 years | 20 years | 3 years | $250,000 | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

      h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

      5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

      6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree to the following applicable sentencing guideline factors:

a. The parties agree that the United States Sentencing Guidelines ("U.S.S.G.") level in this case will be calculated as if the defendant pleaded guilty to all of the robberies admitted to in the Statement of Facts referenced above in Attachment A.

b. The parties agree that the highest offense level for any of the robberies is calculated as follows: Base offense level 20, pursuant to U.S.S.G. § 2B3.1(a). The offense level is increased by 3 levels, pursuant to U.S.S.G. § 2B3.1(b)(2)(D), because a dangerous weapon was brandished or possessed during the commission of the offenses.

c. The parties agree that the multiple count adjustment is 5, pursuant to U.S.S.G. §§ 1B1.2(c) and 3D1.4.

d. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the

4

Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

e. **Therefore, the total offense level is 25.**

7.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income. The Defendant agrees the Defendant will not raise any argument that any specific prior conviction is not a predicate for a career offender designation under U.S.S.G. § 4B1.1.

8.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11(c)(1)(C) Plea

9.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **156 months (13 years) of incarceration** is the appropriate disposition in this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release, restitution, or fine, or to set any lawful conditions of probation or supervised release. If the Court rejects this plea agreement, *either* party may elect to declare the agreement void. Should the Defendant elect to do so, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

10.    The parties also agree that a sentence of **156 months (13 years) of incarceration** is a reasonable and appropriate sentence, taking into consideration the nature and circumstances of the offense, and the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a).

## Obligations of the Parties

11.    At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that

5

*[handwritten annotations: "AP", "CCB CL AJ", "of 13 years of incarceration"]*

this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

12. This Office also agrees to recommend a sentence of 36 months (3 years) of incarceration in the Defendant's pending violation of supervised release case pending under Criminal No. ELH-06-0590. This Office agrees to recommend that any sentence imposed shall be served concurrently with the sentence in this case, CCB-18-140.

### Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent such rights may be legally waived. CL AJ

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

(i) The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

(ii) This Office reserves the right to appeal any sentence below a statutory minimum; and

(iii) The Defendant reserves the right to appeal the sentence of imprisonment if the total term of imprisonment exceeds 156 months;

(iv) This Office reserves the right to appeal the sentence of imprisonment if the total term of imprisonment is less than 156 months.

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

6

### Defendant's Conduct Prior to Sentencing and Breach

14. a. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

b. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

15. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

16. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____
Matthew DellaBetta
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9/26/18
Date

Antonio Johnson

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

9/26/18
Date

Christian Lassiter, Esq.

8

## ATTACHMENT A

## STIPULATION OF FACTS

The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

Between January and February of 2018, Antonio Johnson conducted the following robberies or attempted robberies in the District of Maryland:

**1. January 23, 2018 – Subway at 3860 East Lombard Street, Baltimore, Maryland**
Johnson walked into the restaurant and climbed over the counter, confronting the employee of the store. Johnson displayed a handgun and told the employee to open the register. The employee complied and Johnson then stole the money inside the register. Johnson then fled the location.

**2. January 28, 2018 – Subway at 3515 Eastern Avenue, Baltimore, Maryland**
Johnson walked into the restaurant and climbed over the counter, confronting the employee of the store. Johnson pointed a handgun at the employee and shouted, "Open the fucking register before I blow your brains out!" The employee complied and Johnson then stole the money inside the register. Johnson also stole money that was sitting near the register. Johnson then fled the location.

**3. January 30, 2018 – Subway at 300 West Pratt Street, Baltimore, Maryland**
Johnson walked into the restaurant and entered a bathroom. Several moments later, Johnson walked out of the bathroom and walked behind the employee counter. Johnson pulled out a handgun and pointed it at the employee. Johnson told the employee to open the register and she complied. Johnson then stole the money from the register and fled the location.

**4. February 2, 2018 – Subway at 1520 West North Street, Baltimore, Maryland**
Johnson walked into the restaurant and walked behind the counter, confronting the employee of the store. Johnson displayed a handgun and told the employee to open the register. The employee complied and Johnson then stole the money inside the register. Johnson then fled the location.

**5. February 5, 2018 – Subway at 3232 Greenmount Avenue, Baltimore, Maryland**
Johnson walked into the restaurant and climbed over the counter, confronting the employee of the store. Johnson displayed a handgun and told the employee to open the register. The employee complied and Johnson then stole the money inside the register. Johnson then fled the location.

**6. February 7, 2018 – Dunkin' Donuts at 2001 East Monument Street, Baltimore, Maryland**
Johnson walked into the store and asked to buy one dozen donuts. While the employee gathered the donuts, Johnson jumped over the counter. Johnson displayed a handgun and told the employee to open the register. When the employee could not open the register, Johnson fled the location..

### 7. February 8, 2018 – Subway at 37 East 25th, Baltimore, Maryland

Johnson walked into the restaurant and asked for a sandwich. Johnson then jumped over the counter and displayed a handgun. Johnson demanded the money from the register. The employee complied and Johnson then stole the money inside the register. Johnson then fled the location.

### 8. February 10, 2018 – Dunkin' Donuts at 2016 Maryland Avenue, Baltimore, Maryland

Johnson walked into the restaurant and walked up to the counter. Johnson pulled out a handgun and pointed it at one of the employees. Johnson then shouted, "Open the drawer or I'll blow your fucking brains out!" The employee complied and Johnson then stole the money inside the register. Johnson then fled the location.

### 9. February 11, 2018 – Subway at 3515 Eastern Avenue, Baltimore, Maryland

Johnson walked into the restaurant and pulled out a handgun. Johnson pointed the handgun at the employee and shouted, "If you play with me or call the police I will kill you. Open the drawer!" Johnson then handed the employee a bag and told the employee to put the money and the restaurant's cookies in the bag. The employee complied. Johnson then took the bag back and fled the location.

### 10. February 12, 2018 – Subway at 300 West Pratt Street, Baltimore, Maryland

Johnson walked into the restaurant and displayed a handgun. Johnson told one employee to go into the back of the restaurant and told another to open the register. The employees complied and Johnson then stole the money from the register. Johnson then fled the location.

Johnson never work a mask during the robberies and in nearly all of the robberies wore a black messenger bag slung over his shoulder. Video surveillance from the robberies captured Johnson's face, as well as the clothing and weapon he used in the robberies. The Federal Bureau of Investigation ("FBI") and Baltimore City Police Department ("BDP") released a poster depicting photos of the suspect from the robberies. Investigators subsequently received an anonymous tip directing them to the area of Maryland Avenue and 21st Street.

BPD officers responded to the location and observed Johnson in the area. Officers saw that Johnson appeared to be the suspect from the wanted posters. Officer also observed that Johnson was wearing the same style pants and watch worn by the suspect in the robberies. Johnson was transported to the BPD Citywide Robbery unit. An FBI investigator issued *Miranda* warnings to Johnson and he agreed to speak. Johnson admitted committing the robberies.

Investigators subsequently obtained a search warrant for Johnson's home and located clothing worn by Johnson during the robberies from inside the house. Investigators also obtained a search warrant for Johnson's cell phone that was seized from him when he was arrested. A search of the phone revealed communications from Johnson to his friends where he bragged about committing the robberies.

The above-described Subway and Dunkin' Donuts businesses were restaurants engaged in interstate commerce and an industry which affects interstate commerce. Therefore, the Defendant's conduct affected interstate commerce.

SO STIPULATED:

_____
Matthew DellaBetta
Assistant United States Attorney

_____
Antonio Johnson
Defendant

_____
Christian Lassiter, Esq.
Counsel for Defendant